UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BASSEM AYAD,

                            Plaintiff,

            -against-                                      **REPORT AND
                                                           RECOMMENDATION**
PLS CHECK CASHER OF NEW YORK,                              20 CV 01039 (CBA) (CLP)
INC.,

                            Defendant.
-----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On February 26, 2020, plaintiff Bassem Ayad ("Ayad") commenced this action against

defendant PLS Check Casher of New York, Inc. ("PLS"), alleging violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law § 650 et seq.

("NYLL"), seeking overtime and unpaid wages, liquidated damages, unlawful wage deductions,

and attorney's fees. (Compl.[1] ¶¶ 1-2).

        By Notice of Motion dated October 15, 2020, defendant moved, pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure, and the Federal Arbitration Act, 9 U.S.C. § 1 et

seq. ("FAA"), to compel arbitration and dismiss plaintiff Ayad's Complaint because he had

entered into an agreement with defendants which obligated him to arbitrate any disputes. On

December 15, 2020, the Honorable Carol Bagley Amon referred the motion to the undersigned to

prepare a Report and Recommendation.

        For the reasons set forth below, it is respectfully recommended that a decision on

defendant's motion to compel arbitration be deferred pending the outcome of a jury trial pursuant

to 9 U.S.C. § 4 on the question of whether there is a valid agreement to arbitrate.

---

        [1] Citations to "Compl." refer to the initial complaint, filed by Ayad on February 26, 2020, ECF No.
1.

FACTUAL BACKGROUND

Plaintiff Ayad was employed by PLS from on or about July 13, 2018, until on or about February 14, 2020. (Compl. ¶ 11). During this period, Ayad was employed as a manual worker within the meaning of the NYLL. (Id. ¶ 12). He alleges that, during this period, PLS paid him on a bi-weekly basis in violation of the NYLL. (Id. ¶ 13). Ayad's regular hourly rate was $18 per hour, and he alleges that he worked at least approximately 60 to 70 hours per week. (Id. ¶¶ 14-15). He claims that PLS had a practice of improperly reducing his recorded work hours by about two to five hours or more per week, and that he received no wages for the reduced hours. (Id. ¶ 16). Ayad alleges that while PLS had a policy and practice of deducting approximately 30 minutes from his worktime each day for lunch, he did not actually receive this lunch break, but instead was made to continue working. (Id. ¶ 17).

Moreover, Ayad alleges that he was required to work between 10 to 15 hours of overtime per week for PLS, and that he received no wages for these additional hours of work. (Id. ¶ 18). During these overtime hours, Ayad was required to run various errands for PLS in his own vehicle, at a cost of $20 per week in gas, for which he was never compensated by PLS. (Id. ¶¶ 18-19). In addition, Ayad alleges that PLS failed to provide him with the notice required by NYLL § 195(1). (Id. ¶ 22). Finally, Ayad claims that there were several deficiencies present in the wage statements provided to him by PLS, including a failure to state the hours he worked each week. (Id. ¶ 23).

Defendant contends that at the time of his hiring, Ayad executed an arbitration agreement in which he agreed to submit any disputes relating to his employment to arbitration. Ayad contends that he was never presented with the full text of the agreement, and thus never agreed to

2

its terms.  Accordingly, the issue before this Court is whether the parties should be compelled to

submit their dispute to arbitration.


## DISCUSSION

A.  Legal Standard

In Steelworkers v. Warrior & Gulf Navigation Co., the Supreme Court held that

"arbitration is a matter of contract and a party cannot be required to submit to arbitration any

dispute which he has not agreed so to submit."  363 U.S. 574, 582 (1960); see also Howsam v.

Dean Witter Reynolds, Inc. 537 U.S. 79, 83 (2002).  Whether the parties have agreed to submit a

dispute to arbitration is "an issue for judicial determination," unless the parties have clearly

indicated that the question of arbitrability should be decided by the arbitrator.  AT&T

Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986).  While it can be

inferred that the parties to an arbitration agreement intended certain issues of arbitrability, such

as procedural questions, to be determined by the arbitrator, the gateway question presented here

is one which the parties "would likely have expected a court to have decided."  Howsam v. Dean

Witter Reynolds, Inc., 537 U.S. at 83 (2002).

The FAA provides that "[a] written provision . . . to settle by arbitration . . . shall be

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract."  9 U.S.C. § 2.  The Supreme Court and the Second Circuit have

generally enforced agreements to arbitrate, noting that there is a strong federal policy in favor of

promoting arbitration consistent with legislative intent.  See AT&T Mobility v. Concepcion, 563

U.S. 333, 344-45 (2011); Guyden v. Aetna, Inc., 544 F.3d 376, 382 (2d Cir. 2008); Arciniaga v.

General Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006).  Based on this strong federal policy, a

broad agreement to arbitrate creates a presumption of arbitrability which may only be overcome

by "positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute." Holick v. Cellular Sales of New York, LLC, 802 F.3d 391, 395 (2d

Cir. 2015) (quoting Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, 198 F.3d

88, 99 (2d Cir. 1999)).  However, the FAA's "liberal policy in favor of arbitration is limited by

the principle that 'arbitration is a matter of consent, not coercion.  Specifically, arbitration is a

matter of contract, and therefore a party cannot be required to submit to arbitration any dispute

which [it] has not agreed so to submit.'"  Id. (alteration in original) (quoting JLM Indus. v. Stolt-

Nielsen SA, 387 F.3d 163, 172 (2d Cir. 2004)).

In determining whether there is an enforceable agreement to arbitrate, courts apply

general principles of contract law, looking not only at whether the individual has acknowledged

the terms of the written agreement, see David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923

F.2d 245, 249 (2d Cir. 1991), but also at whether the individual continues to perform services

following notice of the obligation to arbitrate disputes.  See Brown v. Coca-Cola Enters., No. 08

CV 3233, 2009 WL 1146441, at *6-8 (E.D.N.Y. Apr. 28, 2009) (granting motion to compel

arbitration despite the absence of a signed arbitration agreement where plaintiff continued to

work after receiving employee manual including arbitration provision).

"'In the context of motions to compel arbitration . . . the court applies a standard similar

to that applicable for a motion for summary judgment.'"  Bensadoun v. Jobe–Riat, 316 F.3d 171,

175 (2d Cir. 2003).  In considering a motion for summary judgment, the court "credit[s] all

factual inferences that could rationally be drawn, in favor of the party opposing summary

judgment."  Bandler v. BPCM NYC, Ltd., No. 12 CV 3512, 2014 WL 5038407, at *6 (S.D.N.Y.

4

Sept. 29, 2014), aff'd sub nom. Michael Bandler, MB & Co. v. BPCM NYC, Ltd., 631 F. App'x

71 (2d Cir. 2016) (citing Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).

A party seeking to compel arbitration "must make a prima facie initial showing that an

agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the

making of that agreement 'in issue.'" Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d

Cir. 2010) (citing Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003)); see also

Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625, 628 (2d Cir. 1945) (holding that the party

seeking to compel arbitration must make a prima facie showing that "an agreement to arbitrate

was proposed and accepted"); Rothstein v. Fung, No. 03 CV 0674, 2004 WL 1151568, at *1

(S.D.N.Y. May 24, 2004) (holding that "[a]s the moving party, defendants bear the burden of

proving written agreements obligating both plaintiffs to arbitrate").

If this prima facie showing is made, the burden shifts to the non-moving party to establish

a genuine issue of material fact. Blatt v. Shearson Lehman/Am. Exp. Inc., No. 84 CV 7715,

1985 WL 2029, at *2 (S.D.N.Y. July 16, 1985). The party "opposing arbitration may not satisfy

this burden through 'general denials of the facts on which the right to arbitration depends;' in

other words, '[i]f the party seeking arbitration has substantiated the entitlement by a showing of

evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts

showing that there is a dispute of fact to be tried.'" Dill v. JPMorgan Chase Bank, N.A., No. 19

CV 10947, 2020 WL 4345755, at *4 (S.D.N.Y. July 29, 2020) (citing Oppenheimer &

Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)); see also Doctor's Assocs., Inc. v. Jabush, 89

F.3d 109, 114 (2d Cir. 1996) (holding that: "[t]o establish a genuine issue entitling a party to a

jury trial, 'an unequivocal denial that the agreement [to arbitrate] had been made [is] needed, and

some evidence should [be] produced to substantiate the denial'") (quoting Almacenes Fernandez

S.A. v. Golodetz, 148 F.2d at 628).  Courts have found the party opposing arbitration to have satisfied its evidentiary burden through the provision of "affidavits and exhibits attached to the petition and answer" which "tend[ed] to substantiate appellants' denial of the existence of contractual relations."  Interocean Shipping Co. v. National Shipping & Trading Corp., 462 F.2d 673, 676 (2d Cir. 1972).

A genuine issue of material fact provides "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Golden Pac. Bancorp. v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  In determining whether a valid arbitration agreement exists, the court resolves "all reasonable inferences in favor of the non-moving party."  Abdullayeva v. Attending Homecare Servs. LLC, 928 F.3d 218, 221 (2d Cir. 2019) (citing Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016)).

If a genuine issue of material fact is shown, an evidentiary hearing or summary jury trial is required by The Federal Arbitration Act.[2]  See 9 U.S.C. § 4 (providing that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof"); see also Tehran-Berkeley Civ. & Env't Engineers v. Tippetts-Abbett-McCarthy-Stratton, 816 F.2d 864, 868 (2d Cir. 1987) (finding that an arbitration agreement's contractual ambiguity required an evidentiary hearing); Rothstein v. Fung, 2004 WL 1151568, at *1; Firestone Fin. Corp. v. Marion Fabrics, Inc., No. 94 CV 1314, 1994 WL 319314, at *3 (S.D.N.Y. June 29, 1994) (finding that "an evidentiary hearing is required under § 4 of the Federal Arbitration Act" in order to determine whether a party was bound by a clause of an arbitration agreement); Milliken & Co. v. Flamingo Textile Mills, Inc.,

---

[2] Court have used the terms "trial" and "evidentiary hearing" interchangeably in describing the hearing required by 9 U.S.C. § 4 where a showing of a genuine issue of material fact is made.

No. 89 CV 2952, 1989 WL 97833, at *3 (S.D.N.Y. Aug. 16, 1989) (finding that if respondent raises a genuine issue of material fact, an evidentiary "trial" is required under 9 U.S.C. § 4).

The Federal Arbitration Act provides that when a genuine issue of material fact is raised, "the party alleged to be in default [of the arbitration agreement] may . . . on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose." 9 U.S.C. § 4. See also Burch v. P.J. Cheese, Inc., 861 F.3d 1338, 1347 (11th Cir. 2017) (noting that appellant had a statutory right under 9 U.S.C. § 4 to have a genuine issue of material fact regarding the making of an arbitration agreement be referred to a jury).

B.  The Orientation and Arbitration Agreement

Ayad was hired by defendant on July 13, 2018.  Both parties agree that Ayad attended an orientation with PLS in Queens on July 16, 2018, during which he was presented with and signed the signature page of the arbitration agreement. (Ayad Decl.[3] ¶¶ 6-8; New Team Member Checklist[4] ¶ 6).  The parties dispute virtually every other fact, including whether Ayad was provided with a complete copy of the arbitration agreement.

PLS submitted a Declaration from Derwin Valerio ("Valerio"), a District Manager employed by PLS.  (Valerio Decl.[5] ¶ 3).  Valerio claims to have been one of the District Managers who conducted Ayad's orientation and interviewed Ayad.  (Id. ¶¶ 4, 7).  Valerio

---

[3] Citations to "Ayad Decl." refer to the Declaration in Opposition to Defendant's Motion to Compel, filed on November 22, 2020, ECF No. 22.

[4] Citations to "New Team Member Checklist" refer to the New Team Member Checklist attached to the Motion to Compel Arbitration, filed on October 15, 2020, ECF No. 19-3

[5] Citations to "Valerio Decl." refer to the Declaration of Derwin Valerio in Support of Defendant's Motion to Compel Arbitration attached to the Motion to Compel Arbitration, filed on October 15, 2020, ECF No. 19-2.

asserts that the orientation session took place from 10:00 a.m. to approximately 2:00 p.m.  (Id. ¶ 11).  He notes that "[e]ach employee at orientation, including the Plaintiff, was given a 'New Hire Kit' at the beginning of the orientation which has the forms and documents we cover during the orientation."  (Id. ¶ 14).  One of these documents was the "New Member Checklist" which identifies the documents which are to be discussed during the orientation.  (Id. ¶ 16).  While it is undisputed that both Ayad and Valerio signed this checklist, Ayad alleges that Valerio did not do so in his presence, as he claims that Valerio was never at the orientation.  (Ayad Decl. ¶ 12).  Valerio disputes this assertion.  (Valerio Supp. Decl.[6] ¶¶ 2-3).

Valerio claims that the New Hire Kit which Ayad received contained two complete copies of the arbitration agreement: one copy for the employee's records, and one to be returned.  (Valerio Decl. ¶¶ 20-21).  According to Valerio, the employees, including Ayad, were provided a chance to review the arbitration agreement and ask any questions about it.  (Id. ¶ 21).  Valerio's initial Declaration incorrectly states that "Plaintiff signed the arbitration agreement on June 18, 2018 and turned it in during the orientation."  (Id. ¶ 22).  When Ayad challenged this statement by noting that the orientation took place on June 16 and not June 18, Valerio submitted a Supplemental Declaration conceding that "[t]he June 18, 2018 date found in paragraph 22 of my previous declaration was a typographical error," and that the orientation instead took place on June 16, 2018.  (Valerio Supp. Decl. ¶ 9).

After the orientation was completed, Valerio emailed PLS' Human Resources Department a copy of the signature page of the Arbitration Agreement, containing Ayad's signature.  (Valerio Decl. ¶ 23).  According to Valerio, it was standard practice to record only the signature page of the agreement as "after each orientation there are sometimes hundreds of

---

[6] Citations to "Valerio Supp. Decl." refer to the Supplemental Declaration of Derwin Valerio in Further Support of Defendant's Motion to Compel Arbitration, filed on December 14, 2020, ECF No. 24.

documents we need to scan and removing the pages of the arbitration agreements reduces the number of pages that we need to scan." (Valerio Supp. Decl. ¶ 5).  The physical sheet of paper originally signed by Ayad has not been located.  (Id.)

Ayad presents a very different version of events in his declaration.  He claims that Valerio neither interviewed him, nor attended the orientation.  (Ayad Decl. ¶ 7).  According to Ayad, his orientation was instead conducted by Perla Ramirez, Cesy Leon, Albania Almonte, and Esthefanya Uribe.  (Id. ¶ 9).  He notes that Valerio was PLS' District Manager for the Bronx, not Queens.  (Id. ¶ 7).  For his part, Valerio admits that he is the District Manager for the Bronx but observes that "District Managers from one District routinely conduct new hire orientations for employees in other Districts." (Valerio Supp. Decl. ¶ 2).  Valerio further asserts that neither Albania Almonte or Esthefanya Uribe was present at the orientation, as both are Directors, not District Managers, and only the latter conduct orientations.  (Id. ¶ 3).  However, PLS has not provided declarations from either Almonte or Uribe to substantiate these claims.  Nor has PLS provided statements from the other two individuals who Ayad claims conducted the orientation – Perla Ramirez and Cesy Leon.

In addition, Ayad claims that contrary to Valerio's Declaration, the orientation lasted only about 2.5 hours, including a lunch break.  (Ayad Decl. ¶ 10).  He claims that not all the documents listed on the New Hire Checklist were discussed during the orientation.  (Id.)  In particular, he claims that only the signature page of the arbitration agreement was ever presented to him, and that he "strongly believes" there was no discussion of the terms of the arbitration agreement during the orientation.  (Id. ¶¶ 10-11).  He observes that, unlike many of the documents listed on the New Hire Checklist, the arbitration agreement's pages were not displayed as part of the orientation's PowerPoint presentation.  (Id. ¶ 11).  He asserts that there

were no opportunities to pose questions during the orientation and that he was never told that he could consult with an attorney before signing the documents. (Id. ¶ 13). Ayad claims that, having now viewed the terms of the alleged agreement over the course of the instant proceedings, he "would need the help of an attorney to try to understand it if it was presented to" him. (Id.) As a result, while Ayad does not dispute that the signature on the page is his, he claims that he was unable to read and understand the terms of the alleged agreement as they were not provided or explained to him and he was not told he would be given the opportunity to consult with an attorney about them. (Id. ¶¶ 10-11, 13).

A final point of contention between the parties concerns the authenticity of the Arbitration Agreement as presented by PLS. In addition to his assertion that Valerio never presented him with the five pages detailing the content of the Agreement, Ayad observes that the font size of the text in those pages appears to differ from that of the signature page he admittedly signed. (Id. ¶ 14). Ayad considers this perceived lack of uniformity between the documents to be evidence in support of his claim that the five pages containing the terms of the agreement do not correspond to the signature page which he signed. (Id.) Valerio responds to this observation in his Declaration, stating: "[t]he font on the signature page that [Ayad] signed may look a bit different from the agreement that was given to him, but that is only because it was scanned and sometimes when we scan documents, coloring and font size can change a little." (Valerio Decl. ¶ 24).

In sum, Ayad claims that there was no valid arbitration agreement, and that PLS' motion to compel arbitration should thus be denied. On the other hand, PLS claims that there was a valid arbitration agreement, and that its motion to compel arbitration and motion to stay the case pending arbitration should thus be granted.

C. Analysis

The parties do not dispute that if a valid arbitration agreement between them exists, the dispute at issue falls within its scope.[7] The key question raised by the parties is therefore whether such an agreement was entered into.

The threshold issue is whether PLS has made a prima facie showing of an agreement to arbitrate.[8] If PLS has made such a showing, the burden shifts to Ayad to establish a genuine issue of material fact. If PLS has not made out a prima facie showing, the motion to compel arbitration and to stay the case pending arbitration should be denied.

PLS asserts that "[p]laintiff signed the Arbitration Agreement that clearly and unambiguously requires arbitration of his claims." (Def. Mem.[9] at 7). However, while Ayad

---

[7] When there is an enforceable agreement to submit to arbitration, courts must consider whether "the dispute at issue comes within the scope of the arbitration agreement." In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011) (citing ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002)).

[8] It should be noted that Ayad and PLS dispute whether the so-called "best evidence rule" applies to PLS' evidence of an arbitration agreement. The Federal Rules of Evidence provide that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Crucially, "an exception to the best evidence rule provides that '[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith." Nicosia v. Amazon.com, Inc., 384 F. Supp. 3d 254, 268 (E.D.N.Y. 2019), aff'd, 815 F. App'x 612 (2d Cir. 2020) (citing Fed. R. Evid. 1004). In order to satisfy this exception, '[t]he party seeking to prove the contents of the writing must establish a proper excuse for the nonproduction of the document and that the original did exist.'" Bobcar Media, LLC v. Aardvark Event Logistics, Inc., 354 F. Supp. 3d 375, 382 (S.D.N.Y. 2018) (citing Crawford v. Franklin Credit Mgmt. Corp., No. 08 Civ. 6293, 2015 WL 1378882, at *4 (S.D.N.Y. Mar. 26, 2015)). Moreover, the party "must meet this burden by a preponderance of the evidence." (Id.) There are serious questions as to whether PLS' production of documents satisfies the best evidence rule, but rather than resolve the motion on this basis, the Court has evaluated the sufficiency of the evidence as provided. This is because the parties' dispute over the application of the best evidence rule is best weighed by the jury at an evidentiary trial. During the evidentiary trial, the parties will have an opportunity to more fully litigate the issue of whether PLS adequately explained the loss of the original document, whether such a document ever existed, and whether PLS' apparent policy of document disposal constitutes bad faith. The Court's decision not to resolve this motion on best evidence rule grounds is without prejudice to any similar evidentiary concerns which the plaintiff may raise at a later stage.

[9] Citations to "Def. Mem." refer to the Defendant's Memorandum of Law Filed in Support of its

11

admittedly signed the signature page, he denies having ever been presented with the terms of the agreement.  (Ayad Decl. ¶ 10).  In essence, this Court must first decide whether PLS' provision of an original copy of the signature page, and duplicate copies of the terms, is sufficient to make a prima facie showing of an agreement.  It is.

Where the moving party failed to produce either a complete or signed document, courts have found that the moving party failed to make out a prima facie showing that an agreement to arbitrate existed.  See Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc., 349 F. App'x 551, 552-53 (2d Cir. 2009); see also Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d 685, 693 (S.D.N.Y. 2015).  In Dreyfuss, the Second Circuit found that the moving party had failed to make a prima facie showing that a valid arbitration agreement existed where the moving party produced only the first and signature page of the purported arbitration agreement.  349 F. App'x at 552-53.  The court explained that while the moving party "was able to produce at least three types of documents containing arbitration agreements, which had been signed by TGS employees during the period of Dreyfuss' employment," the moving party produced "no single standard document containing an arbitration clause."  See also Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d at 693 (finding no prima facie showing where "[d]efendants offered only sample contracts between non-parties and AT & T Wireless and asked the Court to infer that Plaintiffs were bound by similar clauses").

By contrast, courts have found the provision of signed and complete written agreements sufficient to make a prima facie showing of an arbitration agreement.  See Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 241 (S.D.N.Y. 2020) (finding prima facie showing satisfied by defendant's submission of signed written arbitration agreements); Rothstein v. Fung,

_____

Motion to Compel Arbitration and Stay the Action, filed on October 15, 2020, ECF No. 19-8.

2004 WL 1151568, at *1 (finding prima facie showing satisfied by defendant's submission of

signed agreements); Blatt v. Shearson Lehman/Am. Exp. Inc., 1985 WL 2029, at *2 (finding

prima facie showing satisfied by defendant's submission of a signed written agreement with an

arbitration clause).

Here, while PLS only submitted a scanned copy of the signature page of the purported

agreement, PLS has also provided the Court with what it alleges are standard duplicate copies of

the terms of the arbitration agreement.  Unlike in Mayfield, where the moving party presented

the court with what were concededly different "sample" contracts, Mayfield v. Asta Funding,

Inc., 95 F. Supp. 3d at 695 (noting that the court had not been provided with "a single word of a

contract between any Plaintiff and AT & T Wireless"), PLS alleges that it has produced what the

court in Dreyfuss termed a "standard document."  Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.,

349 F. App'x at 552.  PLS asserts that the five pages detailing the terms of the arbitration

agreement are identical to those used at each new hire orientation.  (Valerio Decl. ¶ 15).

Had PLS submitted only the signature page of the arbitration agreement, PLS would have

failed to make a prima facie showing.  However, in light of PLS' provision of allegedly standard

duplicate copies of the terms of the agreement, the Court finds that PLS has narrowly managed

to satisfy its prima facie showing.

Although PLS has made a prima facie showing of an agreement to arbitrate, Ayad denies

that an agreement was actually reached.  He disputes PLS' claim that he was presented with the

full six-page arbitration agreement, and he denies being given an opportunity to review it and to

understand it.  PLS argues that Ayad has provided no evidence to support his "general denials of

the facts on which the right to arbitration depends."  (Def. Reply Mem.[10] at 4) (citing Dill v.

---

[10] Citations to "Def. Reply Mem." refer to the Defendant's Reply Memorandum of Law in Further Support of its Motion to Compel Arbitration and Stay the Action, filed on December 14, 2020, ECF No.

JPMorgan Chase Bank, N.A., No. 19 CV 10947, 2020 WL 4345755, at *4 (S.D.N.Y. July 29, 2020)).[11]  However, beyond generally denying the existence of the arbitration agreement, Ayad has raised a number of  issues of material fact relating to the circumstances under which he signed the signature page of the agreement, such that a reasonable jury might find there to have been no valid arbitration agreement between Ayad and PLS.  "Some evidence," along with an unequivocal denial of his entrance into a valid arbitration agreement, is sufficient to meet Ayad's burden.  Doctor's Assocs., Inc. v. Jabush, 89 F.3d at 114.

In support of his argument, Ayad not only challenges the circumstances surrounding the orientation meeting where the agreement was allegedly provided but he raises other questions as to the documentation provided to the Court.  First, Ayad has questioned whether Valerio was actually present during the orientation, as PLS claims.  Ayad not only denies that Valerio was present, but he points out that "Valerio testified that the orientation was held, and Plaintiff signed the arbitration agreement on June 18, 2018."  (Pl. Mem. at 2).  He contends that this statement "appears to be false as the signature page was signed at the orientation held on July 16, 2018." (Id.)  Accordingly, Ayad argues that "a reasonable jury can easily conclude that Mr. Valerio's testimony is false."  (Id.)  While Valerio claims that this discrepancy in his testimony is merely a "typographical error" (Valerio Supp. Decl. ¶ 9), a reasonable jury asked to weigh the credibility of Ayad and Valerio might find that this "error" casts doubt on the accuracy of Valerio's testimony.

Further, Ayad has correctly identified that Valerio was PLS' District Manager for the Bronx, not Queens, where the orientation took place.  (Ayad Decl. ¶ 7).  Although Valerio claims

---

23.

[11] It is true that many of the purported issues of material fact raised by Ayad are mere conclusory denials without substantiating evidence.  However, it is sufficient that at least *some* issues of material fact be raised and substantiated by Ayad.

that "District Managers from one District routinely conduct new hire orientations for employees in other Districts," a reasonable jury, absent further evidence, could find this to be additional evidence that Valerio was not present at the orientation. (Valerio Supp. Decl. ¶ 2). Valerio's presence during the orientation is vital to PLS' claim that Ayad was presented with the entire agreement and that the agreement was explained to him. If Valerio was not in attendance at the orientation, then his testimony detailing the provision and discussion of the arbitration agreement cannot be credited. Moreover, Ayad has named several other PLS employees and directors who Ayad claims were present at the orientation session. Not only has PLS not provided statements from these potential witnesses to rebut plaintiff's claims, but there has been no documentary evidence provided that would verify the identity of those in attendance on the date of the actual orientation. If Valerio and PLS have additional information supporting Valerio's claims, a jury trial on the issue of Valerio's attendance at the orientation and whether the arbitration agreement was discussed at that orientation is the proper venue for this evidence to be produced and weighed.[12]

Ayad also raises issues about some of the documentation provided by defendant. Ayad notes that "one of the PowerPoint slides submitted by Defendant shows the words 'Arbitration Agreement' but does not have a single page of the purported arbitration agreement unlike the other documents in the other slides." (Pl. Mem.[13] at 14). While the PowerPoint presentation does not contain a page of the alleged arbitration agreement, it does display pages from each of the other documents included within the "New Hire Kit," many of which are of lesser

---

[12] A jury trial is proper under 9 U.S.C. § 4 because Ayad timely demanded a jury trial on the genuine issues of material facts. (Pl. Mem. at 13) ("Once again, a jury trial is requested on all issues of fact concerning the purported arbitration agreement, including but not limited to all issues of material facts concerning the formation of the purported arbitration agreement").

[13] Citations to "Pl. Mem." refer to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration, filed on November 23, 2020, ECF No. 21.

significance than the purported arbitration agreement.  (PowerPoint[14] at 6-19).  If this evidence is

viewed in the light most favorable to the non-moving party, a reasonable jury could consider this

as evidence corroborating Ayad's assertion that he was never presented with the terms of the

arbitration agreement during the orientation.

Ayad has also challenged the typographical distinctions between the signature page and

the five alleged pages of the arbitration agreement, arguing that "these are indeed different

documents."  (Pl. Mem. at 6).  While Valerio's explanation that "sometimes when we scan

documents, coloring and font size can change a little" (Valerio Decl. ¶ 24) makes sense, PLS has

not explained why the original arbitration agreement and the signature page executed by Ayad

were not maintained by defendant.  Since the Federal Arbitration Act requires a trial when there

is an issue as to the making of the arbitration agreement, this Court finds that plaintiff has raised

sufficient issues of material fact and respectfully recommends that a jury trial pursuant to 9

U.S.C. § 4 be scheduled to resolve the dispute. See 9 U.S.C. § 4.; see also Tehran-Berkeley Civ.

& Env't Engineers v. Tippetts-Abbett-McCarthy-Stratton, 816 F.2d at 868.[15]

---

[14] Citations to "PowerPoint" refer to the PowerPoint presentation attached as Exhibit E to the Motion to Compel Arbitration, filed on October 15, 2020, ECF No. 19-7.

[15] The Court rejects PLS' argument that "the arbitration agreement would be enforceable even if Plaintiff did not sign it, because Defendant made Plaintiff aware that he was required to arbitrate all claims during her [sic] new hire orientation."  (Def. Reply Mem. at 6).  In support of this argument, PLS gestures to "the long-standing rule that an arbitration clause in a written agreement is enforceable, even if the agreement is not signed, when it is evident that the parties intended to be bound by the contract."  (Id.) (citing God's Battalion of Prayer Pentecostal Church, Inc. v Miele Associates, LLP, 6 N.Y.3d 371, 812 N.Y.S.2d 435 (2006)).  However, the facts of God's Battalion are clearly distinguishable from those of the case at hand.  Unlike in God's Battalion, it is not at all clear that Ayad intended to be bound by an arbitration agreement.  Indeed, the question as to whether Ayad was presented with, and explained, the terms of the agreement lies at the heart of this dispute.

CONCLUSION

In light of the foregoing, the Court respectfully recommends that a decision on PLS'

motion to compel arbitration of Ayad's claims be deferred pending a jury trial pursuant to 9

U.S.C. § 4 on the issues identified above.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections

within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      July 26, 2021

                              /s/ Cheryl L. Pollak
                              Cheryl L. Pollak
                              Chief United States Magistrate Judge
                              Eastern District of New York